# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>SCOTTY RAY STEEN,<br><br>　　　　　　Defendants. | CR-21-73-GF-BMM<br><br>**ORDER** |

## INTRODUCTION

Defendant Scotty Ray Steen ("Steen") has filed a motion to suppress all evidence obtained by law enforcement during a search of his home on May 4, 2022. (Doc. 46). Steen contends that law enforcement lacked sufficient information to establish probable cause to obtain a search warrant. *Id.* The Government opposes the motion. The Court held a hearing on the matter on June 27, 2022. (Doc. 56).

## BACKGROUND

The Russell Country Drug Task Force ("RCDTF") began an investigation in February of 2021, into a suspected drug trafficking group possibly operating from Highwood, Montana. (Doc. 49-1). A report of the investigation identified Steen as

a likely participant in the drug trafficking group. (*Id.*) The report also identified "C.R." as a person associated with the group. (*Id.*) RCDTF obtained a search warrant to place a tracking device on C.R.'s vehicle in early 2021. (*Id.*)

The tracking device indicated that C.R. had made numerous visits to the homes of suspected drug dealers. (*Id.*) RCDTF received additional information from FedEx and UPS concerning several packages that were being shipped from Great Falls, Montana to Lancaster, California. FedEx identified one of the packages as containing $7,000. (*Id.*) The packages had been sent from Great Falls by C.R. and her known associates to a recipient identified as J.M. (*Id.*)

Law enforcement conducted a search of Steen's trash on April 27, 2021. (Doc. 49-2). Officers found a shipping label bearing Steen's name that showed that a package had been shipped from Steen to J.M., C.R.'s suspected source, at the known address in Lancaster, California. (Doc. 49-3). Officers also found a large zip lock bag that contained residue of a crystal-like substance, a piece of tubing commonly used by drug users to assist the introduction of drugs into a vein, and a vacuum sealed package commonly used to conceal odors from narcotics. (Doc. 49-4 at 3, 5). Two of the recovered baggies contained residue that tested positive methamphetamine. (*Id.* at 3). Numerous pieces of mail confirmed that the trash belonged to Steen. (*Id.* at 5).

Detective Chris Araujo applied for and obtained a warrant to search Steen's residence on May 4, 2021, from a Montana state court judge. (*Id.*) In addition to the evidence found in the trash, the application for the search warrant contained the following information: 1) RCDTF had been conducting a narcotics investigation on suspected Great Falls methamphetamine supplier C.R.; 2) C.R. had been using mail services to traffic money and narcotics; 3) C.R. had been sending money to her suspected supplier in California; 4) C.R. had frequented Steen's house; and 5) Steen had an active warrant for his arrest for the possession of methamphetamine. (*Id.* at 3).

Officers found approximately 101 grams of suspected methamphetamine, 4.6 grams of suspected heroin and a large quantity of drug paraphernalia and packaging. (Doc. 49-6). Officers also discovered a semi-automatic .45 caliber handgun and ammunition. (*Id.*) The search further revealed $8,700 in currency, 121 U.S. silver dollar coins, and other several assorted silver pieces. (*Id.*) Officers arrested Steen on site the same day and transported him to the Great Falls Police Department. (Doc. 49-7).

Law enforcement read Steen his *Miranda* warnings and he agreed to speak with the officers. (Doc. 49-8.) Steen revealed his suppliers of methamphetamine in the interview and the fact that he had communicated with his suppliers via text

message. (*Id.*) Detectives obtained a second search warrant and extracted Steen's cell phone records and text messages. (Docs. 49-8 & 49-9).

A federal grand jury issued an Indictment against Steen. (Doc. 1). The Indictment charges Steen with three crimes: Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C §841(a)(1) (Count I); Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count II); and Prohibited Person in Possession of a Firearm, in violation of 18 U.S.C. §§922(g)(3) and 924(a)(2) (Count III). (*Id.*)

## LEGAL STANDARD

The Fourth Amendment safeguards the right of people from unreasonable searches and seizures. U.S. Const. amend. IV. "In no quarter does the Fourth Amendment apply with greater force" than in one's home. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (J. Ginsburg, dissenting) (citations omitted). The Fourth Amendment imposes the two following requirements: (1) all searches and seizures must be reasonable; and (2) a warrant may not be issued unless probable cause is "properly established," and the scope of the authorized search is "set out with particularity." *Id*. at 459.

Evidence proves admissible in Federal Court if law enforcement's search and seizure has complied with federal constitutional standards, *See United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987); *Elkins v. United States*, 364 U.S.

4

206 (1960). A defendant bears the burden of showing that a search conducted pursuant to a warrant was unlawful. *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

## ANALYSIS

**I.   Whether probable cause existed to search Steen's home.**

The Fourth Amendment requires specificity for a warrant. *U.S. v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993). Specificity requires particularity and breadth to prove constitutional. *Id.* (citation omitted). For particularity, the warrant must clearly state what the search seeks. *Id.* (citation omitted). For breadth, the scope of the warrant must "be limited by the probable cause on which the warrant is based." *Id.* (citation omitted).

Courts look to "the totality of circumstances" to determine whether probable cause exists to issue a warrant. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). In issuing a search warrant, courts must make a "practical, common-sense decision" whether a "fair probability" exists that the search will uncover contraband or other evidence in a particular place. *Id*. Courts may rely on conclusions of experienced law enforcement officers when determining the location of evidence of a crime. *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987). Opinions of experienced law enforcements officers prove highly important in making probable cause determinations. *United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984).

Courts extend great deference to a finding of probable cause when a "substantial basis" exists to conclude that the supporting affidavit established probable cause. *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994).

Steen argues that the information presented in the Application for a Search Warrant of his home ("Application") (Doc. 49-4) failed to establish probable cause. (Doc. 47 at 6). Specifically, Steen questions whether the Application's allegations of a friendship with a suspected drug dealer, drug packaging pulled from his trash, a shipping receipt to a suspected drug dealer, and an arrest warrant for possession of methamphetamine establish sufficient grounds to search his home. *Id*. at 2, 6-8. Steen points to *United States v. Abernathy* 843 F.3d 243 (6th Cir. 2016), to support his position.

Law enforcement in *Abernathy* recovered contraband from a single trash pull consisting of several marijuana roaches and plastic bags with traces of marijuana residue. *Id.* at 256-57. The Sixth Circuit determined that this evidence, standing alone, failed to establish probable cause to search the defendant's house. *Id.* The Sixth Circuit reasoned that probable cause failed to exist without evidence that the defendant had been involved in past drug crimes. *Id.* at 255. The Sixth Circuit concluded that stronger evidence of ongoing long-term drug use within the residence proved necessary to demonstrate probable cause. *Id*. at 256. Courts previously had recognized such evidence to include affidavits that contained an

additional fact that permitted the court to draw the inference that evidence of wrongdoing would be found in the defendants' homes. *Id.* at 253. The Sixth Circuit pointed to the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes. *Id*. (citing *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999)).

The Southern District of Ohio's analysis in a similar case regarding a warrant to search the defendant's home for contraband related to marijuana use provides context. *See United States v. Elliot*, 576 F.Supp. 1579, 1581 (S.D. Ohio 1984). *Abernathy* quoted *Elliot* in concluding that "the waste products of marijuana use do not, of themselves, indicate any continued presence of contraband in the home." *Id*. at 254 (quoting *Elliot*, 576 F. Supp. at 1581). *Abernathy* additionally acknowledged that the trash pull evidence certainly suggested that someone in the residence had smoked marijuana recently. *Abernathy*, 843 F.3d at 255. This fact standing alone, however, failed to create an inference that the residence contained additional drugs. *Id.* at 255. Drugs by their very nature "are usually sold and consumed in a prompt fashion." *Id*. (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)).

Conversely, in *United States v. Leonard*, the Seventh Circuit addressed whether multiple trash pulls by themselves may establish probable cause to search a residence. 884 F.3d 730, 734 (7th Cir. 2018). The Court determined that

7

marijuana residue from two trash pulls one week apart from selected bags left in a public alley outside the defendant's home established probable cause to issue a search warrant. *Id.* at 732. The Seventh Circuit reasoned that while one search turning up marijuana in the trash might be a fluke, "two indicate a trend." *Id.* Whether law enforcement found a particularly large quantity of drugs or rendered multiple positive tests of different trash pulls within a fairly short time, "both tend to 'suggest' repeated and ongoing drug activity in the residence and 'create' a fair probability that more drugs remain in the home." *Id*. at 734 (quoting *Abernathy,* 843 F.3d at 255).

    The information contained in the Application in this case contains more evidence than mere remnants from a one-time drug use from a single trash pull. Steen had been linked to C.R. Detective Araujo's Application includes information that C.R. had been the subject of a narcotics investigation. (Doc. 49-4 at 2-3.) The investigation revealed that Steen had been C.R.'s associate and that C.R. had frequented Steen's home. (*Id.*)

    Law enforcement had tied C.R. and Steen to the possible shipping of narcotics through the mail. The Application explains that C.R. had been using various types of mail services to facilitate trafficking of money and narcotics to and from her suspected supplier in California. (*Id.* at 2). Detective Araujo included in the Application the fact that law enforcement had obtained a UPS shipping

receipt in Steen's trash that showed a shipment to the California supplier and listed Steen as the sender. (*Id.*)

Law enforcement had discovered a connection to Steen and the shipment of narcotics through the mail. The Application included information regarding the evidence that law enforcement found in Steen's trash at his residence on April 27, 2021, including packages associated with drug trafficking that tested positive for methamphetamine. (*Id.*) Numerous of pieces of mail found in the trash belonging to Steen confirmed that the trash was, in fact, Steen's. *Id.* Detective Araujo acknowledged that based on his training and experience, Steen had been associated with drug trafficking. (*Id.* at 6-9). Finally, Detective Araujo noted that Steen had an active warrant for his arrest for possession of methamphetamine. (*Id.* at 3).

Alone, each allegation listed in the Application may not prove sufficient to establish probably cause. The Court looks, however, to "the totality of the circumstances" to determine probable cause. *Gates*, 462 U.S. at 214. The totality of the circumstances suggest that Steen had participated in past drug crimes. Detective Araujo included evidence of Steen's connections with C.R., including C.R.'s frequent stops at Steen's residence. The shipping receipt linked Steen to a suspected supplier in California. The active warrant for Steen's arrest for possession of methamphetamine also must be considered when reviewing the information included in the Application.

The cumulation of such evidence, combined with the evidence gathered from the trash pull at Steen's residence on April 27, 2022, demonstrate a trend and suggest ongoing drug activity within Steen's home. *Leonard*, 884 F.3d at 734. *Leonard* relied on only two incidents as being necessary to establish probable cause. *Id*. The Application in this case lists numerous incidents. The information contained in Detective Araujo's Application for a search warrant exceeds even the basis for probable cause from two trash pulls in *Leonard*.

Steen argues that each piece of information contained in the Application suffers from a defect. (Doc. 47 at 8). First, Steen argues that being friends with a C.R., a suspected drug trafficker, does not make him a drug trafficker. (*Id.*) He asserts that the Application alleges that Steen was an associate of C.R., not that Steen had been working with C.R. Second, Steen argues that warrant for his arrest was for possession of methamphetamine rather than for distribution of drugs. (*Id.*) Steen insists that the arrest warrant supports an inference only of his drug use. Third, Steen argues that the shipping receipt proves stale as it was dated four months prior to the trash pull at Steen's house on April 27, 2021. (*Id.* at 9). Lastly, Steen argues that the evidence pulled from his trash that tested positive for methamphetamine indicate his drug usage, not drug trafficking. (*Id.*)

The Court views the evidence contained in the Application in aggregate under the "totality of circumstances" test rather than as isolated events. *Gates*, 462

U.S. at 214. The recovered shipping receipt bearing Steen's name was addressed to C.R.'s suspected supplier in California. (Doc. 49-4 at 2). Coupled with Steen's association with C.R., this receipt links Steen directly to drug trafficking. Although the receipt was four months old when found, "probable cause may continue for several weeks, if not months," of the last instance of suspected drug trafficking activity. *U.S. v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (citations omitted). The information in the Application showed a "fair probability" that Steen's residence contained methamphetamine. *Gates*, 462 U.S. at 214. *See also Leonard*, 884 F.3d at 734. A sufficient basis existed to support probable cause to search Steen's home given the totality of circumstances.

## ORDER

Accordingly, **IT IS ORDERED** that Steen's Motion to Suppress (Doc. 46) is **DENIED**.

Dated the 22nd day of July, 2022.

_Brian Morris_
Brian Morris, Chief District Judge
United States District Court